You can have a seat, you don't need that, versus Antonio Ramos. All right, now you can't have a seat. Please, please approach. I'm talking about the people here. The real people. Teresa Dwyer Federer on behalf of the appellants, your honors. Tom Kaus on behalf of the appellees. Okay, 15 minutes per side. We'll have some latitude if you get into some very interesting areas or if we interrupt you too often, but please make sure to reserve some time for rebuttal. Okay? Counsel, could you please speak up? These microphones do not amplify, they just record. Certainly. Thank you. Teresa Dwyer Federer may please the court on behalf of the appellants, Laura Wilson and Janet Ramos. This case does present a very interesting intersection between statute of limitations law, divorce law, accrual and discovery rules. I'm going to focus, I believe, on the merger doctrine issue raised in our brief and would like to reserve five minutes for rebuttal. Before you get into that, I have looked over the language of the document that is the center of this. And first of all, I say where is the duty? When I say where is the duty, I'm saying, first of all, when this guy has a life estate, which means he could expend the whole thing, one. Two, it says he doesn't have to give them to anybody specifically. Where is the duty? And where is also the reliance? You know, when you wake up 30 years later and say, gee, I'm broke, now I need some money, where's the duty? Respectfully, Your Honor, I disagree. I believe this document establishes a fiduciary duty to establish a trust. If the document itself is... Time out for a second. That's fine, but what if I took and used up the full trust? Or whatever you want to call it. What if I just used it up in my lifetime? Certainly there are types of trusts, irrevocable types of trusts that allow... This is irrevocable. I don't believe it is. Well, then you ought to go back to law school. I believe that this is an inter vivis trust, but he could not revoke it, given that it was his commitment in this divorce. If there was anything left, he could. Certainly he is entitled to use the interest earned off of the corpus, but to dispose of the... What if his trust runs... What if the document money runs out? It wasn't money. It was real estate. I understand. What if he can't continue with that because he needs money? That's an interesting issue, and I think that in that instance, he may have the ability to sell a portion of it, maybe, with notice to the beneficiaries. But he has a duty as a fiduciary of the land to not dissipate the corpus of the trust, and the manner in which he goes about doing that is the subject for further examination for a court at that time. What about the issue if he elects not to give it to any of them? He does not have that option under this agreement. What he has an option of doing is deciding on disproportionate shares. It has a presumption of equal shares, but it allows him to make disproportionate shares. Again, if there was a scenario where someone as a trustee said, well, I'm not giving to anyone, then there would be an arguable issue for a court to decide. They could come in in equity and say, this clearly from all circumstances was not how this trust was intended to be used. He wasn't allowed to give it to anyone else. There were five specific beneficiaries at the time. And whether he wants to give half to one and divide the other half amongst the others, that would be subject to litigation and examination at that juncture when he makes that decision, because someone might have an equitable argument. For example, let's say he decides one of the children, one of the five children, original children died. I'm going to give it all to that dead child, and none of you get the rest. I think the other children would have an argument in a court of equity that that is basically a fraud or an inappropriate exercise of his fiduciary duties that he's breaching them. I think the argument they might have is that there was some legal malpractice committed in the drafting of this particular instrument. I would agree with that. Certainly the instrument isn't as concrete as many trusts that we see out there. I mean, if the merger doctrine does apply, it smells like malpractice to me. That is beyond the scope of this proceeding, but I don't think the merger doctrine applies here. I want to make sure I've answered all questions. No, I understand. That's your position. If we look at what the merger doctrine in Illinois case law is very specific as to why the merger doctrine exists, it exists to prevent relitigation of the issues that were before the court at the time between the parties that were before the court at the time. And in this case, very interestingly, in family court in a divorce scenario, what are folks doing? You have a husband and wife who are going to the court, and the real issue before the court is the equitable distribution of the assets and the debts. It is not whether a contract actually exists and whether someone breached that contract when that contract is given and that property is given jointly by those parents to two other children, or five other children, excuse me. And so to apply the merger doctrine in this setting doesn't work. These children were not, they were all but one, were adults. They were not parties to this divorce. They had no ability to come in and have any say so initially in this. In fact, there would be no assumption or no reason to believe that they would have a right to this property. This isn't child support. This isn't college expenses. The decree has another provision for that. This is real property that these parents jointly decided together to give to these five children. They would have normally had no right to that property absent those parents deciding to do that. And so once that decision is made, then they have contractual rights and rights as beneficiaries under that trust to that property and ultimately upon their father's death to the corpus of that trust. So the merger doctrine doesn't make sense to me here, and why we should prevent children specifically who are not represented in a divorce proceeding to not be forced to certain remedies that are timely brought or certain causes of action and claims that are timely brought. Why we would limit them to simply enforcing the decree. Well, maybe it's the finality of judgments. You know, you're talking what, 30 years ago? I don't know if we're up to 30 years, but we certainly are a significant portion. We're in decades anyway. We're into decades. We're past 20. We know that. But the judgment is final as between those two people. What hasn't happened, and many divorce decrees have provisions, your case law, with the life insurance policies is very clear. Other events happen down the road. As far as the 20-year statute goes, that shows what the problem is here because what if the decree sets up something that doesn't come due or is not suable until past 20 years down the road? How is there accrual here? And I think that also highlights the problem with the merger doctrine. That isn't the situation here. Certainly it is. This is not conditioned on an event occurring in the future. I believe it is. I believe that father created a trust, or certainly there is an argument that if the trust failed for one formality or another, there was a constructive or resulting trust here. But there is a trust here. This document identifies Justice Levin has said it's probably somebody that didn't take 101 in law school. But the point is you've got to deal with the documents you've got. And the document you've got is open-ended. The document I have identifies property. It identifies beneficiaries. It identifies who the donor is and who the trustee is. It doesn't really identify the specific property. It does. It says the Mexico property in a divorce proceeding. And, again, this is a motion to dismiss, so all reasonable inferences to be drawn here. Both folks had to know and present to the court that there was evidence of this property. Otherwise, why would you be dividing this? You would be perpetrating, I suppose, some sort of strange situation on the divorce court. And it's obvious they knew. We've presented below the decree that he owned Mexico property in 1973. And your case law says you can look to extrinsic evidence. If you find the terms to be ambiguous, you can look to extrinsic evidence to identify the property. That's what's done here. Also, if the terms are ambiguous, you have issues of fact not to be decided on a motion to dismiss. I think we'd like to hear your argument on the discovery rule and how that might apply in this case. If the merger doctrine doesn't apply and the parties are not limited to simply their only cause of action can be for an enforcement of the judgment, if they are allowed to sue for estoppel and a constructive trust on the express breach of contract, then those statute of limitations apply. And the trial court didn't even go there. Because the discovery rule under your case law is clear that it would apply to all of those statutes. We've argued that it applies to the 20-year, but I will set that aside. It is very clear it applies to the 5- and 10-year statutes that were applicable. And so these children, it was alleged, did not discover that their father had dissipated the corpus of the trust until 2008 when the father spoke to a son-in-law and they conducted a deed search. And at that juncture, they saw that the property had indeed been transferred away. And they brought suit immediately. And we know that the sale of the property by his other children occurred in 2006. And that's still a timely suit. So, again, it becomes an issue of when did they discover, what did they discover, what was reasonable to discover. Those are fact issues if there's any dispute about them. And those are also not appropriate for a motion to dismiss. What they alleged here is we didn't know. We didn't know he had essentially violated the decree. The first time he would have violated the decree was when he transferred this property away. And we did not find that out until 2008. And we had no reason to believe before and no information before that he had done this or done anything different. And that's reasonable given the record here. Given that they have a decree and an agreement and a contract on record before a court that says, I'm doing this, I'm going to do this, and that he is their father as well as the trustee of the property and how we should expect children, whether we should expect children to follow up yearly or constantly and say you haven't transferred that yet or show me that you've done this in family relationships when the promise is already there. It doesn't seem like there was much of a family relationship. And the law should take into account, I think, in terms of determining factual issues, that's for the prior fact, as to what was reasonable given the circumstances of this family. Certainly coming out of a divorce, and a divorce may be like this, there may have been no communication by the father to his children or very limited. And their ability to talk to him may have been very limited. What more were they supposed to know or do here? Would you address the issue about the 20 years and the date of the judgment and not thereafter? The language of the statute is very clear, but I would point you to the Weber case out of, I believe it's Montana, with a similar statute, a comparable statute. They distinguished it. They do. I don't agree that it's distinguishable. I understand that the statutory... It's not an Illinois case. I understand, and we don't have an Illinois case directly on point here either side. We do have a statute that doesn't talk like other statutes in terms of accrual. But again, even though the statute says from the date of the judgment forward, your case law does say that you cannot have the statute start to run if there's nothing to sue on until after the point in time of 20 years. Otherwise, you have something meaningless and people can basically game the system. And the life insurance policy cases are indicative, I think, of that as well, in terms of you don't find out until way down the road when someone has died that they never made out the life insurance policy for you. And what if they don't die for 20 years? Are you not entitled at that juncture to come in and enforce? Because there was nothing there to enforce, as far as you knew, until post-20 years. Same thing with payments of child support. Your case law is pretty clear. And other payments due on property, if they are beyond the 20-year time frame and they have not come due or the action hasn't occurred, there's no violation of the decree or the agreement, then how can the statute run? And that would seem to me not what the law should be in a logical result. And there are some treatises that indicate that exception to statutes that have that kind of language. I would like to save my remaining time for rebuttal, but would like to... We'll give you more time. We've interrupted you. No, no. We're here to discuss this, and I appreciate the time. What seems most striking here is that the trial court judge struggled and understood that the equities, you couldn't even balance, the balance all is in favor of the appellants. There was a wrongful conduct here. This property was supposed to go to these children by the joint agreement of both parents. There's no prejudice to the other side. There's no issue of staleness. The agreement, all of the documentation is there, and all of the parties are alive. So it is unusual to reach and use something like a merger doctrine against children who were not present and able to litigate or protect their rights or bring in their own lawyer, if they could have at that time, to say, no, refashion this agreement that way. To hold them to a harsh statute of limitations, the 20-year statute, he didn't reach the other statutes, and say, later down the road, when dad waits until the 21st year and decides to transfer it away and begin a process of laundering it to keep the money, that you can't sue. And it is particularly disturbing to do it on a motion to dismiss, where there are allegations that are to be assumed true and correct. And the children said, we didn't know, and we had no reason to know otherwise. And that is supported by not just an avowal, but an agreement before a court, a contract before a court. I'll save my remaining time for rebuttal. Thank you. Good morning, Justices. My name is Tom Kessel, again, on behalf of Apple East. Illinois law, I think, clearly requires the affirming of the dismissal of the Pelham's case in this case. The merger doctrine unquestionably applies. There's numerous cases that say the Merrill-Sullivan agreement is merged in the judgment of decree, and then any action upon that is actually an action upon the law. Illinois law is also clear that the statute of limitations is seven years to enforce the judgment, and there is, you could call it a statute of limitations or a statute of repose, requires that any action upon that must be done within 20 years to revive it. This judgment was entered in October of 1980. They sued in November of 2008. We are 28 years past. To touch on just an issue of staleness that's been kind of a subtext in the briefs that we did not go into directly, the reason why we have these statute of limitations and statute of repose is to prevent these types of things of staleness. There's at least two or three questions of the intent of the parties regarding the vague language that the justices have pointed out in this document, and the ambiguity of that language would necessarily require extrinsic evidence as to their intent. Now, we're going back 28 years. Well, let me ask you something. Realistically, I would say what happened here is the divorce. He really didn't want anybody to get that property, so they wrote it so poorly that they knew it wouldn't be enforceable in the future. So in light of that, where does equity step in? Your Honor, I think there is, surmising what could have happened 28 years ago, I think part of it is they intended someone else to have these properties. He actually ended up giving them to other children, so it's not as if the equities are he took these properties and used all the money for his own good. I think it's easy in this light to paint my client as less than ideal. The only pleadings we have before us are just the complaints, and when you just look at a complaint, the defendant typically comes off less than ideal. So the one thing they didn't address specifically is what remedy could they actually bring now since a BFP has intervened? I don't know that they could. Your Honor, we're seeking money damages? It's money damages, and I think they're seeking a constructive trust on behalf, taking the money out of the other bona fide children's trusts. I think there's a lot of other problems with that that I didn't want to get into the problems of remedy here because I don't think they actually stated a claim. To begin with, these are only two of the five children at the time of the divorce. They don't have any actual interest in this. The language of the document allows him to give all the properties to someone other than the two appellants in this case. They have at best a contingent interest that is dischargeable, which isn't sufficient to intervene 28 years later. I think what they're asking the court to do is to ignore several precedents, create exceptions that have never been done before, and for good reason. You know, I think if they were to, if this court were to adopt their arguments, we would open a Pandora's box about litigation about litigation. What happened more than 20 years ago in terms of this case? What happened in terms of 25 years ago in terms of another case? What the parties intended? The reason the legislature clearly wrote that 20 years and not thereafter was because they wanted to bring finality to judgments. The merger doctrine here does not work to their detriment, although it forecloses the case and the door in this case. I think the merger doctrine could easily be interpreted to work to the benefit of these parties if they had sued in 1994 or 1995. A breach of contract case only would give them 10 years. Having this mental asylum agreement merged into the decree gives them 20 years to enforce any rights they have under it. That is a longer window than they would otherwise have. I think it bears noting that they alleged in their complaint, and it's part of the record that there was the first property transfer from the defendant in this case was in 1993. At the very latest, that was a clear breach of it. I think it's clear that this court order in 1980 was enforceable almost immediately. The next week they could have gone in and said, you have not set up the trust. The court would have given some type of timeline to do that or would have simply said you're in contempt, set up the trust immediately. And those things could have been done. The notion of accrual in this case is a little bit of a misnomer because it's different than the other cases that are cited where it's pension benefits way into the future or college tuition way into the future. This was an order that was immediately enforceable the very next day. It was immediately ignored as well, apparently. I think it was ignored for longer than immediately. Immediately, consistently, into perpetuity. Until it expired and became stale. There's no case cited that would allow for the exceptions that the appellants are asking for in this case. The discovery rule doesn't apply to judgments for a reason because these are public documents. Similarly, the discovery rule doesn't apply to public statutes. You're assumed to know what's in the public record and that's one of the foundations of how our system works. You can't say I wasn't aware of a drunk driving law simply because you didn't know that. And it sets a dangerous precedent if you allow the plaintiffs in this case to say we were unaware of our rights under a public judgment because then you can have defendants who are in the same position saying my attorney didn't tell me, I didn't speak the language, I was not aware of what I was required to do by the court. And then we are litigating, essentially litigating about litigation instead of getting to the merits of what should have transpired. This case doesn't create that much of an interesting intersection as I believe the appellants offer. I think it's a fairly cut and dry case that they are too late. Thank you. Your Honor, I'm sorry. There's one other thing I wanted to add. In the time between filing our briefs and the oral argument, we found other cases from another jurisdiction. There was a North Dakota case. It's a little closer than Montana, not by much. I'll tell you what, counsel. If you want to submit additional authority, just file a motion and consider that. That case held that a judgment that was 10 years old in very similar circumstances where children were trying to enforce a right under that judgment was just stale and they could no longer go for contempt purposes because a judgment needs contempt. For contempt, you need to have actually a valid judgment. I'd like to respond to several points. Counsel talks about what the parties intended. If a document is vague and there is a question of intent, that is a factual determination and not appropriate for a motion to dismiss. I think the intent is made clear on the face of the agreement. They intended this property, both parents, to go to their children nevertheless. He talks about contingent rights. Your Illinois case law makes clear that this kind of right is a, although contingent, is a vested property right. They have a vested property right to that corpus. It may be contingent on their father dying, just like life insurance proceeds, but it is a property right and they have a right to come in and to see that the corpus isn't dissipated inappropriately and that fiduciary duties are not breached. As far as the merger doctrine working to the benefit of these children. Says it gave you another 10 years. Yeah. It doesn't do you any good if you do not, as these children have alleged, do not know that there's been any violation and, in fact, there often hasn't been a violation. But there's no indication that anybody ever said, show us the trust. I mean, you're supposed to do something, give us the trust. There were adults, there was an adult representing the interests of these children. Well, these children, four of the five children were adults at the time of the divorce. I don't think mother was representing their interests at that time. This isn't a case where she's a friend of them as a minor coming in. These are adult children, for the most part. One child, I believe, was in his teens. And this was property they, under normal circumstances, they wouldn't have been entitled to. Parents decide to give it to them. Now, do we want to put the onus on them when there is a written agreement on file before a court establishing a trustee relationship, a fiduciary relationship, and plus you have the relationship of being their parent, one that should be someone you can trust to do the right thing. I don't see why that's a problem. If it says that they're supposed to create a trust for me, I'd like to see the trust. Or you can be children, what is reasonable for them to understand is that you can look at this and say, oh, not as a lawyer, dad's going to have this trust for me, okay, and I'm not going to get anything until he dies, and we don't have the best relationship anyway, so I'm not going to pester him. What could they have done here? Could they have hauled him into court and said, show us the trust? There's been no indication that he hasn't created it, and what if he came in and it's a public record? I don't believe trusts are a public record, and that's interesting. What about the judgment decree? And they had that, and if I am the average person, child, maybe looking at that, I see, I might look at that and say this is a trust for me, and when dad dies I'll get something.  Or, at a minimum, they say dad's going to create this, just like the life insurance cases, and I am not going to bug my father. It's going to cause enough problems amongst the family to say give me the life insurance policy. I'm going to trust he did the right thing. Maybe he's told me he's done the right thing. These are all, by the way, factual questions. Your case law is pretty clear that application of the discovery rule is a factual issue. Again, what was reasonable under these circumstances for these children to know? What was it reasonable for them to do? They're all factual questions if we're allowed, if we find some legal way, some legitimate vehicle to undo this and look at the circumstances under which this judgment was entered. It is certainly the discovery rule, reaching it is legitimate if you vacate the trial court's decision saying that the merger doctrine doesn't apply here, and they were not limited to simply bringing claims, a claim of enforcement only, which is how you get to the 20-year statute. My question to him, what are they actually going to be able to get in the long run? I didn't say it was. Say we do what you request and we vacate it and remand it. Sure. Let's look at your cases here and what's been done. And the purpose of a constructive trust is to reach those assets. And the property has been sold, true, but it was sold for $2 million, and the allegation is only $1 million was put in trust for the other children. Now, you can go get those proceeds back. You have life insurance cases where parents, instead of putting the life insurance proceeds in the name of the child or beneficiary who they had agreed to, left it to their state, left it to somebody else. And the court says, no, under my equitable powers, that money comes back here. Go do discovery, find out where it is. It's going to be put in a constructive trust. And by the way, Dad, you haven't obeyed this court. We're going to appoint a new trustee. You want to apply for income during your lifetime, go ahead. But we're going to keep this corpus for these children because you've shown a propensity to violate a decree or an agreement that you made. And I think that is one remedy. Breach of contract. Yes, you get damages under breach of contract. The property was turned around very quickly for $2 million. It is alleged that its actual value was closer to between 6 to 10. If you're allowed to go to trial, do discovery prove that? You can show that you were damaged. He breached his fiduciary duty. He sold this. He wanted money really quick. For whatever reason, he didn't give it all to the other children. So the property that's worth that much money, there's no, they don't have to say where's the trust, these adult children. I think it depends on where you want to put. The trust is there. It's on the record in the court, the divorce court. Did they need to do more than that is the question. Or do they need, who do you want to put the burden on? The fiduciary who's avowed, who is also their parent, and they say, we've never seen him do anything wrong. We had no knowledge he had done anything wrong. And he didn't have to create the trust right away. I guess that goes back to my, what were they supposed to do? This didn't have a date by which he had to create the trust. They might go back to, you know, concerns about the draftsmanship. And that is why you have remedies like constructive and resulting trust. If there's one formality of an expressed trust that fails, but it's pretty clear. Let's take resulting trust. Resulting trust is about intent. That's why we use our equity. We know what his true intent was. No, we know what both these parents intended as sworn to a court. And that is the legitimate intent, that these children, these five children receive this property. I'm not so sure about that. I think it's a husband that says he doesn't want the kids to get anything, and he's just going along with the wife temporarily. But if we're not sure, we go with what these children have alleged. And they've got back-up extrinsic evidence to support their allegations anyway. In any case, I'm losing my place here. That's okay. Did he get what he intended? So I think it is reasonable. So they put him into court. And he says, but Judge, I don't have to create this trust yet. And there are reasons in Mexico where I wouldn't necessarily deed this. I can have an oral trust. You know, there may be tax reasons. There may be this. There may be that. He doesn't take an action contrary to his agreement until he transfers that property. But he doesn't take the action that is contemplated by the agreement, the creation of the trust, ever. In 28 years. And to the extent that that element, that element, but that property in corpus remains intact and he doesn't do anything that indicates he's not going to pass it to his children. So, again, my question, I don't mean to not answer your question, is even. People do that all the time. What would these children have said and what would they have been able to enforce against him? Until he takes an act that dissipates, that is in clear violation of his agreement and they don't know that that act occurs and have no reason to know. He hasn't told them, like, oh, guess what? It's 21 years and I transferred that, by the way. They have no reason to, you know, know. And the deeds wouldn't have showed them necessarily that there was a trust. People keep their trust documents from their children all the time because they do various things. I don't know that there would be an entitlement. And that's something they certainly could have litigated, again, if there's an element, a technical element of an express trust. What was his time frame to do this? That was certainly not an issue litigated in the divorce and is a factual dispute that should not be decided on a motion to dismiss. We would ask this court to reverse the trial court, vacate this, and let the parties move forward with their discovery and trial. Thank you very much for your time here today. The briefs were very well done on both sides, and I apologize if I, but you withstood the, very well, and I'm kind of happy that you came through the way you did. You really handed yourself well. Thank you very much. I really enjoyed talking with you. Love what I do. Okay. Thank you. We'll get back to you directly.